**PAUL, Plaintiff-Appellee, v. PRUDENTIAL INSURANCE COMPANY of AMERICA, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

**No. 1857.   Decided April 14, 1945.**

Jacobson & Durst, Dayton, for plaintiff-appellee.
Murray & McCarthy, Dayton, for defendant-appellant.

## OPINION

By MILLER, J.

This is an appeal on questions of law from the Court of Common Pleas of Montgomery County, Ohio, wherein a motion for a judgment notwithstanding the verdict was overruled. The action in the Court below was upon a contract of insurance, which was tried before a jury and a verdict rendered in favor of the plaintiff in the sum of $1000.00 and interest.

The facts disclose that on February 8, 1943, the Prudential Insurance Company of America issued its insurance policy on the life of John Paul in the amount of $500.00, which insurance policy contained an accidental death benefit in an equal amount, or a total of $1000.00. Said policy contained the provision that in the event of self destruction by the insured within one year from the date of said policy the com-

pany was responsible only for the amount of the premiums actually paid. Within one year from the date of the policy John Paul was struck by a railroad train operated by the Pennsylvania Railroad Company and as a result of the injuries received at said time he died on June 30, 1943. These facts as to the death of the decedent were admitted in open court by the defendant and thereupon the plaintiff rested its case. These facts were sufficient to create the presumption that the death was accidental.

In the case of **Hassay v. Metropolitan Life Insurance Company, 140 Oh St 266, part 2 of syllabus 1** reads as follows:

"Upon a showing of death by external and violent means the law raises a presumption that death was accidental and upon such showing aided by the presumption, a prima facie case for plaintiff is made."

The defendant thereupon proceeded to introduce evidence from which it claimed that the decedent had committed suicide. One of the witnesses for the defense by the name of Benford claimed that the deceased jumped in front of the locomotive. He testified that he was standing in front of a saloon 150 feet diagonally across from the place where the deceased met his death. He admitted that he had been there in and about the saloon for five hours immediately preceding the occurrence about which he was testifying. He testified that the train was traveling 40 to 45 miles per hour at the scene of the occurrence, which was in a densely populated section of Dayton, while the engineer by the name of Scott, definitely fixed the speed at about 25 to 30 miles per hour Benford testified that the train was whistling right up to the crossing, whereas the engineer stated that the last whistle was at a bridge about 1400 feet from the scene of the accident. Benford testified that the deceased walked diagonally across the spur track and directly onto the main line tracks, and the engineer stated that the deceased walked down between the main line and the spur track for a distance of 15 to 20 feet. Benford testified that the deceased had been standing in front of the store-room across the railroad track for some time; that he saw the deceased walk out to the middle of the track, look both ways and as nothing was approaching, he returned to his previous location in front of the store-room; that upon the sound of the whistle of the train the decedent again started across the tracks and as the locomotive approached he dived right across the railroad tracks in front of the locomotive.

If Benford was correct in his testimony there could be only one conclusion and that would be that the death was suicide. However, there was another witness at the same location with Benford by the name of Smith, who testified that when he first saw the deceased he was falling in front of the train. The engineer by the name of Scott testified that he saw deceased walking along the ties between the main line on which the train was running and the spur track just west of it, and that the last he saw of the deceased he was stooping down like falling across the rails.

A member of the Dayton Police Department, Police Officer Reed, testified that he investigated the accident, arriving while the body still lay under the train, and that he spent a long time at the scene; that he inquired thoroughly as to any witnesses to the accident and even went over to the saloon where Benford claims to have been. Only one witness gave this officer his name and that was a person by the name of Morris, who has since moved to Kentucky and his whereabouts were known, so he did not testify.

The record discloses that the saloon in front of which Benford was standing was at a much lower level than the railroad tracks, which would make it impossible for Benford to see the deceased's feet, which were approximately six inches lower than the top of the rails, so that Benford could not see whether or not the deceased stumbled in the confusion of a train approaching from behind him. Naturally Benford's testimony and credibility became a question for the jury.

It is our conclusion, from the testimony of these various witnesses, that the jury could have found that the death of the deceased was caused either by accidental means or suicide. The evidence, we believe, very strongly suggests the latter, but that it is not conclusive.

Syllabus No. 4 of Hrybar v Metropolitan Life Insurance Company, 140 Oh St 437, reads as follows:

"Where, under the evidence, reasonable minds may arrive at different conclusions as to whether death was by accidental means or suicidal, a jury question arises."

The defendant seems to rely upon the case of Northwestern Mutual Life Insurance Company v Maguire, Admr., 19 O. C. C. 502. In this case there was testimony by two witnesses that they saw the deceased sit down on a pile of lumber, take a revolver, hold it up to his temple, fire and then fall over dead. The evidence showed that the deceased died as a

result of a bullet hole in the temple. There was no other evidence that the deceased met his death in any other way. The Court of Appeals in this case reversed the trial court which found for the plaintiff, and made the finding for the defendant.

The evidence in this case is much stronger than in the case at bar, and therefore is of no benefit to us in this instance.

We have also been referred to the case of **Arthurs v Citizen Coal Company, 37 Abs., 438,** where the Court stated that in passing upon a motion for judgment notwithstanding the verdict the court may consider the entire record by authority of §**11601 GC.**

In a search of the entire record we are of the opinion that in this case reasonable minds might arrive at different conclusions, and therefore the ruling of the trial court was correct and proper.

We have been favored with a very well considered opinion by the trial court, which we think correctly states the law, and which is adopted as a part of this opinion.

The judgment of the trial court will be affirmed.

HORNBECK, P. J., and GEIGER, J., concur.